UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

TAI CHI DANG,

    Defendant.

CASE NO. CR05-0393C

ORDER

This matter comes before the Court on Defendant's motion to suppress (1) contraband seized from his vehicle after a warrantless search, and (2) post-arrest incriminating statements made before any *Miranda* warnings were provided. (Dkt. No. 84.) Having considered the papers submitted by the parties, as well as the evidence, testimony, and oral argument presented at the hearing, the Court finds and rules as follows.

**I.  WARRANTLESS SEARCH AND SEIZURE**

    **A.  Background Facts**

This case arises in the wake of a 2004 investigation known as "Operation Hockey Bag," in which customs agents sought to break up a marijuana-importation ring in which (1) Canadian truckers would transport the drugs into the country disguised among bags of organic material; (2) the truckers would

ORDER – 1

deposit the bags in warehouses in the Kent area; (3) stateside customers, or "runners," would later leave a car for the trucker's use at nearby fast-food restaurants; (4) the trucker would take the runner's car to the warehouse, load it with bags, and return the vehicle to the runner; and (5) the runner would take back the vehicle and depart with the cargo for local delivery.

Although "Hockey Bag" wound down by the end of 2004, the lead investigator (Agent Clammer) came to suspect during his "follow up" to the 2004 investigation that Kiranpal Sandhu and her husband continued to import potent "BC Bud" marijuana to a warehouse in Kent. On October 13, 2005, Clammer and several other customs agents tracked Sandhu from the border—where she claimed to be entering the United States to do some shopping—to the Kent area where she met Rupinder Gill at a gas station. Gill and Sandhu ultimately met and guided a commercial tractor-trailer to a warehouse in the Kent area that Agent Clammer had previously put under surveillance due to suspicious activity. The agents then observed Gill and Sandhu appear to unload bags of peat moss from the trailer into the warehouse. Gill and Sandhu then drove to a nearby fast-food restaurant, where they entered a black pick-up truck that had apparently been left for them in the parking lot, and returned to the warehouse. They drove the truck into the warehouse and emerged some ten minutes later to return to the fast-food restaurant, where they left the truck in the parking lot and departed in a different vehicle.

Defendant then took possession of the truck and drove away. Agents Clammer and Ingersoll followed him and could see that the truck bed contained large bags that had apparently been closed with strips of duct tape; Agent Ingersoll further testified that the truck appeared to be riding low, as if bearing a heavy load. Believing that the sum total of their observations that day—when compared to activity observed during "Hockey Bag"—established probable cause that Defendant was transporting contraband, the agents radioed for a local police cruiser to conduct a traffic stop. Defendant was removed from the vehicle and handcuffed while Agent Ingersoll opened the truck's tailgate and searched the bags of peat moss. When he confirmed that the bags had been cut open, stuffed with marijuana, and resealed with the duct tape, Defendant was arrested and transported to a local jail.

ORDER – 2

B.  **Legal Analysis**

The government bears the burden of proving by a preponderance of the evidence that probable cause existed to stop Defendant in his vehicle and then to search the specific containers in which the contraband was found. *See Larez v. Holcomb*, 16 F.3d 1513, 1517 n.2 (9th Cir. 1994). To meet this burden, the government must establish that the agents' probable-cause determination was "based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith" of the agents. *United States v. Ross*, 456 U.S. 798, 808 (1982). If the government meets this burden, the existence of probable cause by itself justifies the warrantless search—even if no other exigent circumstances were present at the time. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999).

The Court has little trouble finding that the facts established by the government would have supported an issuance of a warrant. The agents' expertise gained from the 2004 investigation and personal observations of the suspicious activities of Sandhu and Gill established a basis of objective facts from which the agents could reasonably conclude that illegal activity was occurring. Their observations of the contents of Defendant's truck and knowledge of how marijuana had been concealed in the 2004 operation buttressed their reasonable belief that the bags contained contraband. *See United States v. Sanchez*, 944 F.2d 497, 497 (9th Cir. 1991) ("[P]olice may search a container located within an automobile . . . even though probable cause for the search focused on the container itself and not upon the vehicle as a whole."). For these reasons, the Court will DENY Defendant's motion to suppress the evidence seized during the warrantless search of his vehicle.

II.  **POST-ARREST INCRIMINATING STATEMENTS**

A.  **Background Facts**

After Defendant was taken to the local jail, Agents Clammer and Ingersoll continued to track activity involving Sandhu's warehouse and arrested two or three other runners like Defendant. Ingersoll then returned to the jail and met with Defendant and a police detective. Ingersoll informed Defendant that he had been placed under arrest, that others like him had also been arrested, and that the agents

ORDER – 3

"wanted him to cooperate." Defendant immediately responded that he did not understand English, and that all he knew was that he had dropped off his truck at the restaurant and a woman had later returned it to him. Ingersoll testified that he then attempted to provide *Miranda* warnings to Defendant for the first time that night, but did not complete the warnings because Defendant did not appear to understand him. Ingersoll testified that he asked Defendant no further questions thereafter.

### B.    Legal Analysis

Because it is undisputed that Defendant's statement was self-incriminating and was made while he "was in custody without having been given the warnings required by [*Miranda*]"; as such, the statement must be excluded "if it was the result of interrogation." *United States v. Padilla*, 387 F.3d 1087, 1093 (9th Cir. 2004). The question here is whether Agent Ingersoll's statement that he wanted Defendant to cooperate constituted "either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). The "functional equivalent" of questioning includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

The Court is satisfied that Defendant's statement was the product of interrogation and must therefore be excluded from trial. It is true that Agent Ingersoll did not promise any particular treatment in exchange for cooperation, or tell Defendant what he could expect absent such cooperation. *Cf. United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992); *United States v. Johnson*, 812 F.2d 1329, 1331 (11th Cir. 1986). However, the Court finds that an investigator in Agent Ingersoll's position should know that his affirmative statement that he wants an in-custody suspect to cooperate is highly likely to elicit an incriminating response. Indeed, the Court finds it "difficult to imagine any purpose for such a statement other than to elicit a response." *Padilla*, 387 F.3d at 1093. Accordingly, the Court will GRANT Defendant's motion IN PART, and ORDER that his post-arrest incriminating statements be excluded from trial.

ORDER – 4

### III. CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby DENIES Defendant's motion IN PART as to the evidence seized during the warrantless search of Defendant's vehicle. However, the Court also GRANTS the motion IN PART, and ORDERS that Defendant's post-arrest statements made in response to Agent Ingersoll's questioning shall not be admitted at trial.

SO ORDERED this 26th day of May, 2006.

*/s/ John C. Coughenour*
UNITED STATES DISTRICT JUDGE

ORDER – 5